LEO EDWIN BROMBERG, APPELLANT, v. LEONE C. FINNELL, RESPONDENT.

No. 4685

April 7, 1964                        391 P.2d 31

[Rehearing denied May 14, 1964]

*John S. Belford* and *Stanley H. Brown*, of Reno, for Appellant.

*Guild, Busey & Guild* and *Howard L. Cunningham*, of Reno, for Respondent.

**OPINION**

By the Court, BADT, C. J.:

For a full discussion of the facts of this case, see our opinion in Finnell v. Bromberg, 79 Nev. 211, 381 P.2d 221. In the former case we considered an appeal from the trial court's judgment awarding damages to Bromberg for Mrs. Finnell's breach of her option contract for the sale to Bromberg of corporate stock at the price

of 60 cents a share. The issues raised by Finnell in that appeal were (1) that Bromberg had not legally exercised his option; (2) that his requirement that the stock-certificates be deposited in the bank (where the money was ready for payment) was an oral modification of the option, and that as the acceptance of the option was required to be in writing, so was any modification; (3) that no proper tender had been made by Bromberg; (4) that Finnell had not repudiated the option; (5) that as some of the testimony was in conflict, and as the case had been tried before Judge A. J. Maestretti, who died before deciding it, and was thereafter, by stipulation, submitted to Judge John W. Barrett upon the testimony taken before Judge Maestretti, our rule against disturbing a finding made upon conflicting evidence, where there was substantial evidence to support it, should not apply, but that we might ignore such finding and substitute our own; (6) that Bromberg's testimony was incredible; and (7) that the finding of damage in the sum of $99,484.93, plus interest, was not supported by the evidence.

We rejected the first six of these seven contentions. Bromberg attempted to support the judgment as against the seventh contention on the ground that the record showed a market value of at least $2.00 per share from May 20 through May 25, 1959, and that as he had accepted the option on May 20, it was presumably the thought of the trial court that five days constituted a reasonable time for delivery of the stock, so that May 25 was the date on which the breach had occurred. We held that the judgment for the *amount* of damage could not be supported on this theory, and that the only real basis for fixing the damages would be the value of the stock on June 2, 1959, the date when Finnell repudiated her contract. No market value as of this date appeared in the record.

We concluded our opinion with these words: "We consider that the judgment must be affirmed in all respects, except the fixing of the amount of damage and that the case must be remanded for a limited new trial on this issue. It is so ordered." It should be noted

that throughout the opinion we were considering only the *market value* of the stock, though in one or two instances we referred to this by using the short term, *value*.

When considering the case on the mandate of our remand the learned district judge took into consideration three motions that had been submitted to him, namely, Finnell's "Motion to extend time for discovery procedure," Bromberg's "Motion to take Turnbull's deposition in Reno rather than Los Angeles," and Finnell's "Motion to release and exonerate the bondsmen on the Supersedeas Bond [filed to stay execution of the judgment]." To this end he filed an 18-page opinion and order, in the beginning of which he recited: "Judge Barrett, the Supreme Court, Counsel for Plaintiff and Counsel for Defendant, all throughout the former proceedings concurred that the measure of damages in a case of this kind is the difference between the option contract price and the market value on the day of the exercise of the option."[1] The learned trial judge then proceeded: "The question which concerns this Court is whether at this point it must accept, the open market value (without question) of this stock as the basis for determining amount of damages as of June 2, 1959, or whether it can go behind the market activity and ascertain its true actual value on the basis of statements contained in Busey's affidavit * * *.

"If this Court MUST accept the bare face market value (without question) as it appeared on some Board somewhere in California[2] on June 2, 1959, it may as well accept [counsel's] Request for Admissions * * * wherein it appears that on June 2, 1959, five separate sales totaling in all 900 shares (out of a possible 600,000 plus outstanding shares) * * * was recorded that day, 700 shares selling at $1.70 per share, 100 shares at $1.75 per share and 100 shares at $1.65 per share * * *. At any rate for purposes of this opinion the court will

---

[1]As noted above, this is not accurate as reciting this court's view. The date of the *repudiation* of the option rather than the date of the exercise of the option was the proper date.

[2]The trading was on the Pacific Coast Stock Exchange.

assume that the Requests will be admitted as submitted.[3] If, as stated, the Requests are admitted and are accepted at face value, then all that remains for this Court is to enter judgment for Plaintiff at $1.70 per share and no further proceedings need be had.

"The query now, is whether this Court should go behind the market value in view of the position urged in Busey's Affidavit which was not presented to the Trial Court or Supreme Court when taken in conjunction with the law cited by both counsel in their respective briefs * * *."

The trial judge then concluded that it had "the authority to inquire into the corporate affairs and stock market activity for the purpose of ascertaining true stock value." To this end "the entire file was reviewed by this Court, in the light of the position now urged, and which as stated, was not directly presented to the trial judge nor Supreme Court, and therefore, this Court assumes not considered by them."

The trial judge then devoted some ten pages to a review of the testimony as given in Mr. Busey's affidavit and other evidence. Toward the end of his opinion the trial judge states: "Learned and highly respected and capable counsel for the defendant must accept the responsibility for not having presented the position on damages now stressed to Judge Barrett or the Supreme Court. This Court is satisfied that neither Judge Barrett nor the Supreme Court viewed the evidence on damages in the light that it was viewed by this Court simply because it was not presented to them. The Court understands that all efforts of both counsel (in briefs and argument to the trial and the Supreme Court) was primarily concentrated and directed to the exercise of the option question and that actually the measure of damages was conceded by both counsel and the Courts to be market value without any question."

The learned trial judge then concludes that "[p]redicated upon the foregoing," he is prepared to grant, should it be made, by Finnell, a motion for summary

---

[3] See our comment on this point in the third from the last paragraph of this opinion.

∎

judgment on the limited issue of damages, that the stock involved was basically worthless or worth not more than 60 cents per share, and that Finnell should return the $5,000 deposit made by Bromberg, or in the alternative, that Finnell be given the opportunity, if she wants it, to develop her present theory to the fullest extent, to engage in whatever discovery is necessary, reasonable and proper in the premises, and denies Bromberg's motion to take Turnbull's deposition in Reno, and orders it taken in California.

In the final three lines of the opinion is found the order from which this appeal is taken—"that Defendant's Motion to Release and Exonerate the Bondsmen on the Supersedeas Bond filed herein on October 11, 1962, be, and the same is hereby granted."

Despite the limitation of the appeal to this single order, the record presents to us an entire package of orders that we cannot ignore. The lower court frankly recognized that the matters and issues considered by it had never been presented at the original trial or the appeal from the judgment resulting from that trial. No new trial had been granted or sought on the ground of newly discovered evidence which Finnell could not with reasonable diligence have discovered and produced at the trial. NRCP 59(a). The court below also frankly admitted that this court's mandate on remand limited the lower court's new trial to the issue of the market value of the stock on June 2, 1959. The trial court accepted (under the unanswered request for admissions) the fact that the market value of such stock as shown by sales on the Pacific Coast Stock Exchange on June 2, 1959, was $1.70 a share. Yet, apparently in a conscientious desire to render a just judgment, it rejected our mandate limiting its power and, without authority so to do, entered into a new trial of various aspects of the case, besides new and additional issues. The same order, in the same package, exonerated the bondsmen on the supersedeas staying execution of the first judgment. It is not reasonably possible to separate the order releasing the sureties on the supersedeas bond from the package of orders

contained in the trial court's opinion and decision and the judgment that followed it.

As noted supra, the trial court was willing to assume, from Finnell's failure to answer the request for admissions, that the request was admitted and that this placed the market value of the stock on June 2, 1959, at $1.70 a share. However, the record shows that at the time of the trial court's opinion, decision, and judgment the time within which Finnell might answer the request for admissions had not expired.[4] We are unable to assume, as did the district judge, that the market value of the stock on June 2, 1959, was $1.70 per share. This proof is still not in the record, just as it was absent from the record filed in Finnell v. Bromberg, supra. See NRCP 36(a).

It should be a simple matter to ascertain whether the stock of Barnhart-Morrow Consolidated was quoted on the Pacific Coast Stock Exchange on June 2, 1959, and what sales, if any, and at what price, were made on such exchange on said date.

All orders of the court below contained in the opinion and decision dated August 9, 1963, and the minute orders entered thereon on the same date are hereby reversed, the sureties on the supersedeas bond remaining answerable thereon (Franklinville Realty Co. v. Arnold Construction Co. (CCA 5th Cir. 1943), 132 F.2d 828; Rector v. Massachusetts Bonding & Ins. Co. (CA DC 1951), 89 U.S.App.D.C. 83, 191 F.2d 329; 7 Moore, Federal Practice 3180 et seq. (2d Ed.), and the case is again remanded for a new trial, limited to the question of

---

[4]The request for admissions did not designate any period or time within which admissions were required to be made. The language of the rule is: "Each of the matters of which an admission is requested shall be deemed admitted unless, *within a period designated in the request* * * * the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections * * *." (Emphasis supplied.)

determining the market value of said stock on June 2, 1959, as shown by the sales of Barnhart-Morrow Consolidated on the Pacific Coast Stock Exchange. Appellant will be allowed his costs in this court.

McNAMEE and THOMPSON, JJ., concur.